

NANCY V. ALQUIST
U. S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MARYLAND
#### at Baltimore

| | | | |
|---|---|---|---|
| In Re: | * | | |
| PRESTON MOORE, SR. | * | Case No. | 95-57258-NVA |
| EILEEN MOORE | * | Chapter | 7 |
| | * | | (Previous Chapter 13) |
| Debtors | * | | |
| *************************************** | * | | |
| PRESTON MOORE, SR. | * | | |
| EILEEN MOORE | * | | |
| | * | | |
| Plaintiffs | * | | |
| vs. | * | Adversary | No. 05-01908 |
| BRANCH BANKING & TRUST | * | | |
| | * | | |
| | * | | |
| Defendant | * | | |

## MEMORANDUM OF DECISION IN SUPPORT OF ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [35]

### I.    Procedural History

Preston Moore and Eileen Moore (the "Debtors" or the "Plaintiffs") filed a voluntary

Chapter 13 petition on October 10, 1995.  On September 27, 1996, an Order [56] was entered on the

Debtors' motion converting the case from Chapter 13 to Chapter 7.  On January 13, 1997, the

Debtors received a discharge in bankruptcy, and on August 29, 1997, the bankruptcy case was

closed [73].  On May 25, 2005, the Debtors filed a Motion to Reopen [74] the Chapter 7 case for the limited purpose of moving for sanctions and for violation of the automatic stay and discharge injunction against Farmers Bank, n/k/a Branch Banking & Trust ("BB&T" or "Defendant").  On August 2, 2005, an Order [80] was entered reopening the case.

On September 1, 2005, the Debtors commenced the instant adversary proceeding (Adversary No. 05-1908-NVA) by filing their Complaint [1] against BB&T for Violation of the Automatic Stay and/or Violation of the Discharge Injunction.  On October 27, 2005, BB&T filed an Answer [12] to the Plaintiffs' Complaint.  On January 13, 2006, the Plaintiffs filed a Motion for Summary Judgment as to liability [23].  On January 30, 2006, BB&T filed its Opposition to the Motion for Summary Judgment [25].  On March 27, 2006, the Court (the Honorable E. Stephen Derby, to whom this case was then assigned) entered an Order [28] denying Plaintiffs' Motion for Summary Judgment as to liability, stating that genuine issues of material fact existed.  On April 24, 2006, BB&T filed a Motion for Summary Judgment [35], maintaining that the "now available" transcript of an August 1996 hearing before the Honorable Mark B. McFeeley (then a visiting bankruptcy judge sitting by designation) discloses that no genuine issues of material fact remain.  On May 10, 2006, the Plaintiffs filed a Response to the Motion for Summary Judgment and Cross Motion for Summary Judgment [37].  A hearing on this matter was conducted on September 18, 2006.  Having had the benefit of argument of counsel, and having considered the pleadings, the memoranda of law in support of the parties' positions, the transcript of the hearing before Judge McFeeley, and the record in this matter, the Court finds there are no issues of material fact and that BB&T is entitled to judgment as a matter of law as to both counts.

## II.     Standard for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure, made applicable to this adversary

proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed R. Civ. Proc. 56(c).

One of the principal purposes of summary judgment is to isolate and dispose of all factually unsupported claims or defenses. Celotex v. Catrett, 477 U.S. 317, 323 (1986). To that end, the Court considers all evidence in a light most favorable to the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (all justifiable inferences are drawn in the nonmovant's favor). The mere existence of an alleged factual dispute does not defeat a motion for summary judgment; rather the standard requires that there be no genuine issue of *material* fact. Id. at 248 (emphasis added). Only disputes over the facts that might affect the outcome of the lawsuit under applicable law will preclude entry of summary judgment. Id. Therefore, once the moving party meets its burden of production, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. The nonmovant may rely on any materials listed in Rule 56(c), except the motions themselves. Celotex, 477 U.S. at 325.

The Court has reviewed the record in this case, including the following documents:

1.      Complaint [1] for Violation of the Automatic Stay and/or Violation of the Discharge Injunction;

2.      Affidavit of Edward D. Groh, (former) counsel to the Debtors, dated January 5, 2005 (this Affidavit is part of the record in this case. It was attached as an exhibit to the Plaintiffs' Motion for Summary Judgment [23], which was denied by Judge Derby. The Court considers it inasmuch as it is favorable to the Plaintiffs);

3.      Answer [12] to the Complaint for Violation of the Automatic Stay and/or Violation of the Discharge Injunction;

4.      Transcript of the August 29, 1996 hearing before the Honorable Mark B. McFeeley attached to the Motion for Summary Judgment as Exhibit A;

The Court has also reviewed matters of record contained in the Debtors' main bankruptcy case, Case number 95-57258-NVA.

### III.    Facts

The following relevant and material facts are undisputed:

1.    The Plaintiffs filed a voluntary Chapter 13 petition on October 10, 1995;

2.    On March 19, 1996, a confirmation hearing was held on the Plaintiffs' original Chapter 13 Plan [10] and the Opposition [19] filed by creditor BB&T;

3.    On March 20, 1996, the Court (Judge Derby) entered an Order [26] denying Plaintiffs' Chapter 13 Plan [10] with leave to amend, and directing Plaintiffs to file an amended Chapter 13 Plan on or before April 19, 1996.  The Order provided that the case may be dismissed by the Court without further notice and a hearing if the Plaintiffs failed to file the Amended Chapter 13 Plan on or before April 19, 2006;

4.    On April 18, 1996, (as the docket reflects) the Plaintiffs filed Amended Schedules A, B, C, I and J, and filed a certificate of service;[1]

5.    On May 1, 1996, the Court entered an Order [35] Dismissing Chapter 13 case (with prejudice) Upon the Failure to Amend Chapter 13 Plan and Notice that the Automatic Stay is Terminated.  This Order dismissed the case as a result of Plaintiffs' failure to file an Amended Chapter 13 Plan, and notified parties that the stay, accordingly, had terminated upon the dismissal;

6.    On May 3,1996, the Plaintiffs filed Debtors' Response to Order Dismissing Case and Request to Rescind Dismissal Order [36], stating that the amended plan had in fact been filed with the Court and a copy served on all parties;

---

[1] The certificate of service reflected only that amended <u>schedules</u> were served on April 17, 1996.  The certificate of service did <u>not</u>, however, represent that an Amended Chapter 13 <u>Plan</u> was served.

4

7.  On May 22, 1996, (as the docket reflects) the Plaintiffs filed Amended Schedules D & F, and filed a certificate of service stating that an amended plan was served on all parties on May 20, 1996;

8.  On May 23, 1996, Judge Derby entered an Order [38] denying (with leave to amend) Plaintiffs' Motion to Reconsider [36] Order dismissing Chapter 13 case ("because the original amended plan has not yet been filed according to the Clerk's records and because, contrary to counsel's representation, the attached certificate of service did <u>not</u> include service of an amended plan.");

9.  On May 28, 1996, the Plaintiffs filed a First Amended Chapter 13 Plan ("Amended Chapter 13 Plan") with a certificate of service [42].  The certificate of service reflects that the Amended Chapter 13 Plan was served on the Chapter 13 Trustee and U.S. Trustee on May 24, 1996;

10.  On May 30, 1996, the Plaintiffs filed an Amended Motion to Reconsider Order Dismissing Chapter 13 Case [43], which included a certificate of service stating that the Amended Chapter 13 Plan was served on the Chapter 13 Trustee, U.S. Trustee, and all creditors and interested parties on April 17, 1996;

11.  Nothing on the docket in this case reflects that the Amended Chapter 13 Plan was <u>filed</u> with the Court until May 28, 2006 (docket entry [42]);

12.  On July 19, 1996, (during the time between the date on which the bankruptcy case was dismissed [35] and the date on which the case was reinstated [55] (the "Gap Period")), BB&T obtained judgment by confession against the Plaintiffs pursuant to a filing in the Circuit Court of Maryland for Anne Arundel County (Case No. 02-C-06-030493);

13.  BB&T's judgment effected a lien upon the Plaintiffs' residence;

14.  On August 19, 1996, the Plaintiffs filed a Motion [47] to Convert the Case from Chapter 13 to Chapter 7 and to Strike Order of Dismissal and to Cancel Hearing on Confirmation of Amended Chapter 13 Plan;

15.     On August 23, 1996, BB&T filed an Objection [52] to Plaintiffs' Amended Motion to Reconsider Order Dismissing Chapter 13 Plan on the grounds that the Plaintiffs did not timely file an Amended Chapter 13 Plan;

16.     On August 26, 1996, Plaintiffs filed a Reply [53] to BB&T's Objection;

17.     On August 29, 1996, a hearing was held (the "August Hearing") on the Amended Motion to Reconsider Order of Dismissal [43] and the Objection filed by BB&T [52];

18.     At the August Hearing, the Chapter 13 Trustee (Ellen Cosby) advised Judge McFeeley that she had received the Amended Plan in her office on May 4, 1996.  (The August Hearing Transcript [35] sets out the following colloquy: The Court: "Ms. Cosby, can you tell me whether or not you got an amended plan at that time?" Ms. Cosby: "My records show, your Honor, that [*inaudible*] it looks like May fourth received an amended plan in my office that was [*inaudible*] on April twenty-third of this year.").  Transcript, Aug. 29, 1996 hearing, p. 6, at lines 15-18;

19.     On September 3, 1996, an Order [55] was entered (in the form proposed by Plaintiffs) granting Plaintiffs' Motion to Reconsider Dismissal of their case, stating that the dismissal was "rescinded;"

20.     On September 27, 1996, an Order [56] was entered converting the bankruptcy case from Chapter 13 to Chapter 7;

21.     On October 9, 1996, the Plaintiffs filed a "suggestion of bankruptcy" in the Circuit Court for Anne Arundel County;

22.     On January 13, 1997, an Order [71] was entered granting the Plaintiffs/Debtors a discharge in bankruptcy;

22.     On September 1, 2005, the Plaintiffs commenced this Adversary Case No. 05-1908-NVA by filing their Complaint against BB&T for Violation of the Automatic Stay and/or Violation of

Discharge Injunction.[2]

**IV.    Issue Presented**

The Plaintiffs' Complaint alleges that BB&T had a duty to remove a lien that was imposed during the Gap Period between the dismissal of Plaintiffs'/Debtors' bankruptcy case and the "rescission" of the dismissal order.  The Complaint alleges that BB&T's failure to do so is a stay violation under sections 362 of the Bankruptcy Code and a violation of the discharge injunction under section 524 of the Bankruptcy Code.  The Complaint demands that the lien be removed and that sanctions be imposed against BB&T.

The issue before the Court is whether actions taken by a creditor during the period between the purported improper dismissal of a bankruptcy case and its reinstatement should be set aside for violation of the automatic stay and/or violation of the discharge injunction.  The Plaintiffs posit that the issue turns on the "wording of the order signed by Judge McFeeley to the effect that the dismissal of the underlying bankruptcy case was rescinded."  See Plaintiffs' Res. to M. for Sum. J.[37], p.2 at ¶ 3. The Plaintiffs argue that Judge McFeeley's Order rescinding the dismissal of the case was entered in consideration of a purported clerical error by the Bankruptcy Clerk in failing to docket a timely filed Amended Chapter 13 Plan, and that Judge McFeeley's Order had the effect of reinstating the case and retroactively reimposing the automatic stay as of the date the case was dismissed.  In other words, the Plaintiffs argue that the dismissal order was void, the automatic stay should not have terminated, and the lien obtained by BB&T during the Gap Period is without effect.

The Plaintiffs correctly point out that Federal Rule of Civil Procedure 60(a) can be used to correct clerical errors or omissions.  Rule 60(a) provides, in relevant part, that "clerical mistakes in judgments, orders, or other parts of the record and errors therein arising from oversight or omission may

---

[2] The Complaint contains two counts: (1) Violation of the Automatic Stay of 11 U.S.C. 362(a); and (2) Violation of the Discharge Injunction of 11 U.S.C. 524.

be corrected by the court at any time of its own initiative or on the motion of any party...." Fed R. Civ. Proc. 60(a). Clerical mistakes include those made by judges as well as ministerial employees. Pruzinsky v. Gianetti, 282 F.3d 434, 440 (6th Cir. 2002). Assuming *arguendo* that the dismissal of the Plaintiffs' (now reinstated) case was caused by a ministerial error (of the Bankruptcy Clerk), then Rule 60 would apply as a procedural vehicle to correct it. The Court agrees that an erroneously entered dismissal order may be "corrected" under Rule 60. The Court does not agree, however, with Plaintiffs' proposition that retroactive reinstatement of the automatic stay, and invalidation of intervening liens, is implicit in such Rule 60 relief.

The Plaintiffs supply no applicable decisional law in support of their position that the automatic stay is retroactively reinstated in the circumstances of this case. To the contrary, the weight of authority leads this Court to the opposite conclusion.[3] For the reasons that follow, the Court finds that "rescission" of the dismissal order in the circumstances of this case does not invalidate actions taken by BB&T to obtain a lien during the Gap Period.


**V.    Applicable Law**

The Bankruptcy Code provides for an automatic stay of proceedings until the earlier of the time the case is closed or the time the case is dismissed. 11 U.S.C. § 362(c)(2). The effect of a case dismissal is to revest the property of the estate in the entity in which the property was vested immediately before commencement of the case. 11 U.S.C. § 349(b)(3). The legislative history to the Bankruptcy Code indicates that the drafters intended for this provision to "undo the bankruptcy case,

---

[3] The Court recognizes, but does not adopt, the argument of Plaintiffs that decisions in which the dismissals resulted from some fault of the debtor (*i.e.*, not because of a clerk's error) should be disregarded. The Court believes that the reasoning set out in those decisions did not turn on whether the debtor was at fault in causing the dismissal. Certain of these decisions did address the cause for the dismissal, but when they did, it generally was in the context of evaluating considerations other than fault- *e.g.*, whether the debtor was denied due process.

8

as far as practicable, and restore all property rights to the position in which they were found at the commencement of the case." In re Weston, 110 B.R. 452 (E.D. Cal. 1989). The Weston court, considering the debtor's second bankruptcy case ("Weston II) stated:[4]

> The legislative history and structure of the code indicates that dismissal of a case should terminate the automatic stay. The comments say that a dismissal is intended to put the parties in the place in which they were before the bankruptcy case was filed. Moreover, since the drafters included provisions for a stay pending appeal, the code's structure indicates that the drafters considered that certain decisions were final. Therefore, the drafters wanted to provide the debtor with a method of forestalling the effects of a final decision by allowing the debtor a stay pending appeal.

Id.

In In re Weston, 101 B.R. 202 (Bankr. E.D. Cal. 1989), the court considered the debtor's earlier bankruptcy case ("Weston I"). The debtor had filed a Chapter 11 petition on March 15, 1985. An order was entered on January 14, 1986 dismissing the case due to unreasonable delay by the debtor to propose a plan, and a notice of dismissal was mailed to all creditors and parties-in-interest. On January 15, 1986 (the next day), a creditor of the debtor filed for and received a default judgment against the debtor. The creditor also filed an attachment lien against a cause of action and judgment being pursued by the debtor against a third party. On January 28, 1986, the debtor filed a motion requesting that the bankruptcy court reconsider its order of dismissal. On February 24, 1986, the bankruptcy court denied the debtor's motion for reconsideration, and the debtor took an appeal to the Ninth Circuit Bankruptcy Appellate Panel. The BAP reversed the bankruptcy court's order dismissing the case, finding that the dismissal was not authorized by Section 1112(b) of the Bankruptcy Code because the application to dismiss was made by an improper party. The debtor's bankruptcy case was reopened on July 18, 1988.

---

[4] On March 15, 1985, Weston filed a Chapter 11 case ("Weston I") In re Weston, 101 B.R. 202 (Bankr. E.D. Cal. 1989). On January 14, 1986, the Bankruptcy Court dismissed Weston I. On March 3, 1986, the debtor filed a notice of appeal of the Order dismissing Weston I. On May 20, 1998, the Bankruptcy Appellate Panel for the Ninth Circuit reversed the Bankruptcy Court's dismissal Order and reinstated Weston I. While Weston I was on appeal, the debtor filed Weston II, addressed at 101 B.R. 452 (E.D. Cal. 1989).

9

Meanwhile, the judgment and "attachment lien" had been lodged against the debtor during the dismissal gap period in that case.

After the case was reopened, the debtor brought an action to void actions taken by the creditor during the gap period. The issue before the bankruptcy court in that case (which is different than the issue in the case at hand) was whether a creditor's recovery of a judgment lien against the debtor's property within ten days of the entry of the order dismissing debtor's case violated the ten day stay against enforcing judgments imposed by Federal Rule of Civil Procedure 62.[5] The bankruptcy court held that the ten day stay contemplated by Rule 62 was not intended to apply to orders involving the dismissal of bankruptcy petitions without a contrary order of the court. Weston, 101 B.R at 205:

> As a preliminary matter, this court agrees with the *Saez* court's analysis of the effect of an order of dismissal upon the automatic stay; namely, that the automatic stay is immediately terminated at the moment the order dismissing the case is entered on the docket. This Court furthermore agrees that this interpretation jibes with the provisions of 11 U.S.C. § 349(b) which defines the effect of an order of dismissal. Thus, the plain language of both the above referenced code provisions serves to contradict the Debtor's suggestion that B.R. 7062 was designed to prevent the automatic stay from lifting immediately upon the dismissal of the case.

Id. at 204-05 (internal citations omitted).

Notwithstanding reversal of the dismissal order in that case, the court held that "because no stay was imposed by Rule 7062, and because the Debtor never secured a stay pending appeal, [the creditor] was free to pursue his state court remedies with complete immunity immediately upon the effective date of the dismissal." Id. at 205.

In Weston, the debtor relied on In re Krueger, 88 B.R. 238 (9th Cir. BAP 1988). In Krueger, the debtors' confirmation hearing was continued and the court directed a creditor to give notice of the

_____

[5] Federal Rule of Civil Procedure 62 is made applicable to adversary proceedings through Bankruptcy Rule 7062. Federal Rule of Civil Procedure 62 provides in pertinent part: "(a) Except as otherwise stated herein, no execution shall issue upon a judgment nor shall proceedings be taken for its enforcement until the expiration of 10 days after its entry...."

continuance to the debtors, but no notice of the continued hearing was, in-fact, given to the debtors or debtors' counsel. Given the absence of notice of the continued hearing (and of the court's directive to amend their plan), the debtors failed to amend their plan, and the court thereafter dismissed the debtors' case. Unbeknownst to the debtors, a foreclosure sale was conducted shortly after the case was dismissed. The debtors filed a complaint seeking that the foreclosure sale be set aside. The bankruptcy court held that there had been no violation of the automatic stay, but nevertheless exercised its equitable powers under Section 105(a) of the Bankruptcy Code to vacate the foreclosure. The court concluded that it was appropriate to use its equitable power under Section 105(a) to unwind the foreclosure sale due to the creditor's bad faith in failing to notify the debtors of the continued confirmation hearing, and due to the lack of due process afforded to the debtors. The Bankruptcy Appellate Panel affirmed, nothing that "an order is void if it is issued by a court in a manner inconsistent with the due process clause of the Fifth Amendment." Krueger, 88 B.R. at 241. It determined that the debtors' bankruptcy case was dismissed in violation of the debtors' due process rights, that the dismissal was properly vacated and, as a result, that the stay was continuously in effect from the date of filing of the petition. The court in Weston, declined to follow Krueger, noting that the dismissal order in Weston had been set aside for reasons that had nothing to do with denial of due process to the debtor. The court stated:

> Debtor's contention that *Krueger* is binding on the court under the facts of this case must be rejected. *Krueger* stands for the proposition that an order issued in violation of a debtor's constitutional rights to notice may properly be rendered void. As the Debtor does not allege any violation of her rights to due process, the exception delineated in *Krueger* does not apply.

Weston, 101 B.R. at 206 n. 12; see also In re Weston (Weston II), 110 B.R. 452, 457 (E.D. Cal. 1989).

The court in Weston held that the automatic stay terminated upon dismissal of the case, and that the actions of the creditor during the dismissal gap period were and remained valid.

In In re Thomas, 194 B.R. 641, 647 (Bankr. D. Ariz. 1995), the debtors' bankruptcy case was dismissed for failing to appear at the required meeting of creditors. On March 13, 1995, the court

11

mailed an order of dismissal to all creditors on the debtors' mailing matrix.  On March 28, 1995, the

debtors filed a motion to reinstate the case, arguing that they never received notice of the meeting of

creditors.  After the motion to reinstate was filed, but before the case was reinstated, a trustee's sale of

the debtors' property was conducted.  On April 28, 1995, the court reinstated the debtors' case.  The

Thomas court acknowledged that it did not "set aside" its prior order of dismissal in the case; that it

merely reinstated the debtors' bankruptcy case:

> In this case, the Debtors miscalendared the Section 341 meeting of creditors,
> which led to the Debtors' failure to attend the meeting and the March 3, 1995 order of
> dismissal.  Although the debtors made a sufficient showing in an *ex parte* motion that
> their case be reinstated, they did not make any showing or carry their burden of proof
> that the March 3 order of dismissal should have been rescinded or set aside for a failure
> to accord due process to the Debtors.

Id. at 645-46.

The court continued:

> According to *Lashley, Weston,* and *Shaw*, once the bankruptcy case is dismissed
> or the automatic stay has been vacated, the debtor must seek an affirmative stay or
> injunction to prevent creditors from pursuing their remedies under applicable state law.
> If the debtor does not so timely act, any actions taken by the creditor while the case is
> dismissed or while a stay is not in effect will be valid.  The Debtors' attempt to couch
> their relief as a retroactive reimposition of the stay, but rather a rescission of the
> order of dismissal so that the case may be deemed pending as of the time it was
> originally filed, misses the point.  *The court certainly has the power to rescind its
> orders, but the court does not exercise such a power which will avoid a foreclosure sale
> conducted pursuant to state law, if at all, unless the debtor has shown that he ir she was
> not accorded due process.*

Id. at 650 (emphasis added).

Several other courts have concluded that reinstatement of a dismissed bankruptcy case does

not affect the validity of a creditor's actions taken during the period in which the case was

dismissed, *unless there was a violation of due process rights*.  See, e.g., In re Acosta, 181 B.R. 477

(Bankr. D. Ariz. 1995) (setting aside foreclosure sale of debtor's property during period between

dismissal and reinstatement of bankruptcy case because debtors were not given actual notice of

continued foreclosure sale).

The Plaintiffs in this case urge that disposition of the instant case turns on the wording of Judge McFeeley's order that the dismissal of the bankruptcy case was "rescinded." The Court has reviewed the August Hearing, during which Judge McFeeley made an oral ruling (followed by signing a written order submitted by the debtors). Nothing in the record supports a finding that the debtors in this case were denied due process. It is true that Judge McFeeley signed an order "rescinding" the dismissal order, but when such order [35] is read in conjunction with the August Transcript, the Court is unable to conclude that the Debtors were denied due process, or that the dismissal itself denied the Debtors' due process.[6] To the contrary, the following passage from the transcript [35] of the August Hearing persuades this Court otherwise:

> The Court:  Well, I think that, under the circumstances of the case and looking through the file, the Debtors obviously filed their amended schedules. It sounds like, if anything, it was counsel who erred in not complying fully with the order of the Court in making sure that the amended plan got filed; although it appears it did in fact get served within the time frame previously set. I don't think the Debtors actions are so egregious that the dismissal with prejudice would be appropriate under these circumstances and I'll set aside the previous dismissal and grant the motion to reconsider. Anything else, then, in this case?

Transcript [35], Aug, 29, 2006, p. 10, lines 14-20.

The decisional law is clear that when a case is dismissed, the stay is terminated, and if the case is reinstated, the stay is not retroactively reimposed (except in limited circumstances not present here), and actions taken by creditors during such a dismissal are and remain valid. A contrary result would have highly disruptive and unintended consequences, creating uncertainty

---

[6] Judge McFeeley described what he intended to do in different ways: "Alright. Then, what I will do is this: I'll grant the motion to reconsider which, as I understand, will reinstate the case which has been dismissed." Transcript, Aug. 29, 2006. p. 5, lines 2-3; "Okay. That makes clear to me that -- that it's appropriate to set aside the order of dismissal." Id. at p. 6, lines 19-20. Judge McFeeley never used the word "rescind" in the hearing or made a finding that the Bankruptcy Clerk made a clerical error.

among creditors who innocently seek to enforce their rights after a dismissal order is entered.

The Plaintiffs' case was not dismissed as a result of want of due process.  The Plaintiffs case was dismissed because the docket and certificate of service filed with the Amended Schedules did not reflect that an Amended Chapter 13 Plan had been timely filed.  Judge McFeeley made findings in the August Hearing with respect to possible culpability of Debtors' counsel.  The Debtors could and should have obtained a stay pending appeal or otherwise requested expedited relief in order to protect against executions and other state law collection remedies.  They did not.[7]  While the Court notes that the Plaintiffs did immediately file a Response to the Order Dismissing case and request for rescission of dismissal order, neither Federal Rule of Civil Procedure 59 nor Rule 60 stays the effectiveness of a dismissal.  In re Hill, 305 B.R. 100, 109 (Bankr. M.D. Fl. 2003). In In re Rivera, 280 B.R. 699 (Bankr. S. D. Ala. 2001), the court held that the creditor was not in contempt for enforcement action which it took after the debtor's Chapter 13 case was dismissed and before the case was reinstated, though the creditor knew, prior to entry of order reinstating case, of debtor's motion to reinstate.  The Rivera court concluded that debtors "must request expedited relief on motions to reinstate in order to protect against repossessions, foreclosures, garnishments, executions, and other state law collection remedies." Rivera, 305 B.R. at 110.

Accordingly, the Court finds that BB&T is entitled to judgment as a matter of law as to Count I.

## VI.    Violation of the Discharge Injunction

The Plaintiffs additionally argue that BB&T's refusal to effect a release on the lien obtained

---

[7] The Plaintiffs represented that they filed a "suggestion of bankruptcy" in the state court litigation on October 9, 1996, after their case was reopened.  This suggests that the Plaintiffs were aware of the action filed by BB&T in the Circuit Court for Anne Arundel County.  If they were not served or otherwise notified about the action brought by BB&T, Plaintiffs presumably may seek remedy in the state court if state law rules for obtaining judgments were transgressed.

14

during the Gap Period constitutes a violation of the discharge injunction.  Section 524(a) of the

Bankruptcy Code provides:

> (a) A discharge in a case under this title -

> > (1) voids any judgement at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, 1228, or 1328 of this title, whether or not discharge of such debt is waived;

> > (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived; and

> > (3) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover from, or offset against, property of the debtor of the kind specified in section 541(a)(2) of this title that is acquired after the commencement of the case, on account of any allowable community claim, except a  community claim that is excepted from discharge under section 523, 1228(a)(1), or 1328(a)(1), or that would be so excepted, determined in accordance with the provisions of sections 523(c) and 523(d) of this title, in a case concerning the debtor's spouse commenced on the date of the filing of the petition in the case concerning the debtor, whether or not discharge of the debt based on such community claim is waived.

11 U.S.C. § 524.

The Court, likewise, finds that BB&T is entitled to judgment as a matter of law as to Count

II.  It is well established that valid liens pass through bankruptcy unaffected.  Cen-Pen Corp. v.

Hanson, 58 F.3d 89, 92 (4th Cir. 1995).  "A bankruptcy discharge extinguishes only *in personam*

claims against the debtor(s), but generally has no effect on an *in rem* claim against the debtor's

property.  In other words, a creditor may retain a lien on property of the debtor that could be

enforced in an *in rem* action; the creditor may not attempt to collect the debt as a personal liability

by seeking money damages.  Additionally, for a debtor to extinguish or modify a lien during the

bankruptcy process, some affirmative steps must be taken toward that end."  Id.  The Plaintiffs did

not file a Motion to Avoid Lien  [82] pursuant to Section 522 of the Bankruptcy Code until some 9

15

years after the bankruptcy case was closed.[8]

Accordingly, because the Court finds that the lien obtained by the Defendant was not a violation of the automatic stay or otherwise invalid, and that the Plaintiffs did not take the appropriate steps to avoid the lien during the case, the Court finds there is no violation of the discharge injunction, and BB&T is entitled to judgment as a matter of law.

**VII.    <u>Conclusion</u>**

A review of the case law provided by the parties and the court's own research reveals no basis in law, absent a due process violation, for the retroactive imposition of the stay, even in circumstances present in this case where the dismissal order was "rescinded."   Additionally, to the extent liens are not avoided, paid or otherwise eliminated as part of the bankruptcy case, valid liens may be enforced post-discharge.  For the foregoing reasons, the Court finds that the Defendant is entitled to judgment as a matter of law as to both counts of the Complaint.

A separate Order will issue contemporaneously.

cc:    Debtors
       David W. Cohen, Esq.
       Edward D. Groh, Esq.
       Andrew Martin Croll, Esq.
       Robert Scarlett, Esq.
       U.S. Trustee

---

[8] On November 7, 2005, and Order [88] was entered Denying Debtors' Motion to Avoid Lien [88] with leave to amend within 30 days.  The Plaintiffs did not file an Amended Motion.